

**U.S. Department of Justice**
*Billy J. Williams*
*Acting United States Attorney*
*District of Oregon*
*1000 SW Third Avenue, Suite 600*      *(503) 727-1000*
*Portland, Oregon  97204-2902*      *Fax:  (503) 727-1117*

July 22, 2015

David Angeli, Esq.
Angeli Ungar Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
david@angelilaw.com

Re:    *United States v. Geoffrey S. Walsh, 3:13-CR-00332-01-KI*
       Revised Plea Agreement Letter

Dear Counsel:

        Pursuant to our emails, meetings and other discussions, below is a revised plea agreement for your client Geoffrey S. Walsh.

1.      **Parties/Scope**:  This revised plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority.  This agreement does not apply to any charges other than those specifically mentioned herein.

2.      **Charges**:  Defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges the crime of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Defendant also agrees to plead guilty to Count 25 of the Superseding Indictment, which charges the crime of Wire Fraud, in violation of 18 U.S.C. § 1343.  In addition, defendant agrees to waive Indictment and plead guilty to a one (1) count Second Superseding Information charging him with Conspiracy to Commit Making False Entries in Bank Records, in violation of 18 U.S.C. §371.

3.      **Penalties**:  The maximum sentence for Count 1 of the Superseding Indictment, Conspiracy to Commit Wire Fraud, is 20 years imprisonment, a fine of $250,000, three years supervised release, and a $100 fee assessment.  The maximum sentence for Count 25 of the Superseding Indictment, Wire Fraud, is 20 years imprisonment, a fine of $250,000, three years supervised release, and a $100 fee assessment.  The maximum sentence for Count 1 of the Second Superseding Information, Conspiracy to Commit Making False Entries in Bank Records, is five (5) years imprisonment, a fine of $250,000, three (3) years of supervised release and a $100 fee assessment.  Defendant agrees to pay the $300 fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done.

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 2

4.    **Elements of the Offenses**:  In order for the defendant to be found guilty, the government must prove the following elements beyond a reasonable doubt:

**Count 1 of the Superseding Indictment -- 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud:**

      (a) During the time period alleged in the Superseding Indictment, there was an agreement between two or more persons to commit the federal crime of Wire Fraud, in violation of 18 U.S.C. § 1343; and

      (b) The defendant became a member of the conspiracy knowing its object and intending to help accomplish it.

**Count 25 of the Superseding Indictment -- 18 U.S.C. § 1343, Wire Fraud:**

      (a) During the time period alleged in the Superseding Indictment, the defendant made up a material scheme or plan to obtain money or property by false promises, pretenses, representations, or omissions of material fact;

      (b) That the defendant knew the promises, pretenses, representations, or omissions of material fact were false or misleading;

      (c) That the promises, pretenses, representations, or omissions were material in that they would reasonably influence a person to part with money or property;

      (d) That the defendant acted with intent to defraud; and

      (e) The defendant used or caused the use of interstate wire communication to carry out or attempt to carry out the material scheme to defraud.

**Count 1 of the Second Superseding Information --18 U.S.C. § 371, Conspiracy to Make False Entries in Bank Records:**

      (a) During the time period alleged in the Information, there was an agreement between defendant and at least one more person to commit the federal crime of Making False Entries in Bank Records, a violation of 18 U.S.C. § 1005;

      (b) The defendant became a member of the conspiracy knowing its object and intending to help accomplish it; and

      (c) That at some time during the existence of the conspiracy, at least one of its members performed an overt act in order to further the objective of the conspiracy.

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 3

5.  **Admissions:** Defendant admits and agrees that the government could prove the following facts beyond a reasonable doubt:

**Count 1 of the Superseding Indictment – 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud:**

(a)  In approximately March 2011, defendant Geoffrey S. Walsh, using interstate wire communication, asked his brother, codefendant Gregory B. Walsh, a financial advisor, to approach Gregory's client, S.P. with an investment opportunity.  Defendant Geoffrey S. Walsh represented to codefendant Gregory B. Walsh that he (Geoffrey S. Walsh) needed a loan of a little more than $1,000,000.00 to purchase and renovate condominiums in the Palm Springs, CA area.  Through interstate communication with codefendant Gregory B. Walsh, defendant Geoffrey S. Walsh promised that, upon the sale of the condominiums, S.P. would receive back her principal, plus 10 percent (10%) interest, and half of any additional profits from the sale. S.P. agreed to make the loan.  On or about March 4, 2011, March 11, 2011, and October 13, 2011, defendant Geoffrey S. Walsh and codefendant Gregory B. Walsh caused wire transfers of S.P.'s funds in the amounts of $373,624.87, $390,500.00, and $376,779.84, respectively, from New York to California for the purchase of three condominiums in La Quinta, CA.
In May 2012, and without knowledge or permission of S.P., defendant Geoffrey S. Walsh pledged two of the condominium properties as collateral for a $500,000 loan from Oregon resident H.S.  In May 2012, and July 2012, defendant Geoffrey S. Walsh sold two of the condominiums, without S.P.'s knowledge or permission.  Defendant Geoffrey S. Walsh used the proceeds from the sale of the two condominiums to satisfy other of his debts, and never repaid S.P. for her loan as promised.  Defendant Geoffrey S. Walsh continues to hold title to the third condominium property in the name of his Oregon Limited Liability Company, Terwilliger Curves LLC.

(b)  As part of the plea agreement, defendant Geoffrey S. Walsh also admits that in approximately January 2013, he contacted codefendant Gregory B. Walsh via interstate wire communication, and asked if S.P. would be interested in loaning him (Geoffrey S. Walsh) $2,000,000.  On or about March 1, 2013, defendant Gregory B. Walsh caused the wire transfer of $2,000,000 of S.P.'s funds from New York to the client trust account of B.R.S.K.G.D.H., a law firm in Portland, OR, that defendant Geoffrey S. Walsh had retained.  Using interstate wire communication, defendant Geoffrey S. Walsh sent defendant Gregory B. Walsh a "revised" promissory note dated February 28, 2013.  This promissory note was signed by Timberline Hills Investors LLC member G.S., and promised to repay S.P. the principal amount of $2,000,000 at a rate of either 10 percent (10%) or 15 percent (15%) on or before May 1, 2013.  The promissory note was secured by a deed of trust, signed by G.S., on a real estate project owned by Timberline Hills Investors LLC, the value of which exceeds the principal amount of the note. The deed of trust was not recorded against the property until after the Indictment in this matter was returned. The promissory note did not cover the loans made by S.P. to defendant Geoffrey S. Walsh for the Palm Springs condominiums.  Between March 4, 2013 and July 2013, defendant Geoffrey S. Walsh caused the B.R.S.K.G.D.H. law firm he had retained to engage in numerous financial transactions on his behalf and for his benefit with the $2,000,000 received from S.P's investment

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 4

account.  The majority of those funds ($1,705,000.00) were used to pay the balance of a line of credit at the Bank of Oswego, on behalf of a former customer of defendant against whom the Bank of Oswego was threatening litigation.  S.P. was never repaid the more than $3,000,000.00 of principal or any promised interest from the funds used for the purchase of the Palm Springs real estate or for the funds that defendant used to pay his debts and personal financial obligations.

As part of the plea agreement, defendant Geoffrey S. Walsh admits to the following conduct related to Count 25 of the Superseding Indictment:

**Count 25 of the Superseding Indictment – Wire Fraud**:

(a)  In or about May 2012, defendant Geoffrey S. Walsh was introduced to H.S. through a mutual friend.  In or about April 2012, defendant Walsh told H.S. that he (Walsh) needed to borrow $500,000. Defendant Geoffrey S. Walsh promised to repay $500,000 plus interest of $75,000 to H.S.  On May 3, 2012, defendant Walsh signed a loan agreement and promissory note for $500,000, promising to repay to H.S. the loan plus interest of $75,000 in one lump-sum payment on November 30, 2012.  Under the terms of the loan agreement with H.S., defendant Walsh represented that the collateral for the promissory note was two Trust Deeds for real property located at 48475 Legacy Drive, La Quinta, California 92253 and at 48789 Legacy Drive, La Quinta, California 92253.  Defendant Walsh also represented that all financial documents and information provided by him to H.S. were true and correct, and fairly represented Walsh's financial condition.  Under the terms of the loan agreement, defendant Walsh represented that the loan proceeds were to be used for business or commercial purposes only. Defendant Walsh failed to disclose to H.S., the following material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading: that, at the time the loan from H.S. was made, he (Walsh) was in negotiations to sell at least one of the condominiums that was promised as collateral for H.S.'s $500,000 loan.

(b)  Based on defendant Walsh's omissions of material facts, on or about May 3, 2012, H.S. agreed to make the loan and issued a $500,000 cashier's check to defendant Walsh. Defendant Walsh sold the loan collateral in May and July 2012.  These sales were made without the knowledge or consent of H.S.  Defendant Walsh sent a series of interstate communications to H.S. from approximately November 2012 to July 2013, the purpose of which were to lull H.S. into a false sense of security that he (Walsh) would repay H.S. the loan principal and interest due to him.  On or about June 26, 2013, defendant Walsh made a $300,000 payment to H.S.  As of the date of the Superseding Indictment, defendant Walsh owed H.S. at least $200,000 plus interest and penalties on the loan.

/ / /
/ / /
/ / /

**Count 1 of the Second Superseding Information**:

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 5

   Defendant Geoffrey S. Walsh was employed by the Bank of Oswego as Vice President & Director of Mortgage Services from approximately January 2009 to November 2010, and as Vice President, Business Development & Lending Services from November 2010 to approximately May 2012. The deposits of the Bank of Oswego were insured by the Federal Deposit Insurance Corporation (FDIC) during this time period. As a banking institution insured by the FDIC, the Bank of Oswego was required to submit Call Reports, or quarterly reports to the FDIC that set forth the financial status of the Bank. From at least 2009 through October 2010, the Bank of Oswego was in second position on a loan taken by the owner of property located at 952 A Avenue, Lake Oswego, OR. The first mortgage was held by Citimortgage, Inc. In approximately October 2010, the A Avenue property went into foreclosure, and Citimortgage reconveyed the property to the Federal National Mortgage Association (FNMA), commonly known as Fannie Mae. In the normal course, if the property were ultimately sold to a buyer for less than the amount of the first mortgage, the Bank of Oswego would have suffered a loss of approximately $99,091.42, the remaining balance of the second mortgage it held on the property, and would have had to list that loss on its Call Report to the FDIC. Bank officers at the Bank of Oswego wanted to minimize the bank's loss on the property and did not want to report the loss to the FDIC because it would affect the Bank's credit worthiness and rating. An individual with the initials G.R. expressed to the Bank of Oswego an interest in purchasing the property for a price higher than the amount of the first mortgage on the property, which price would reduce the loss that the Bank might otherwise suffer upon the sale of the property. Defendant and his coconspirators attempted to have the Bank of Oswego purchase the property, after which the Bank would sell the property to G.R. Originally, an attempt was made to purchase the first mortgage note from Citibank, but Citibank informed the Bank that the property had been sold to FNMA as part of a larger pool of loans. Defendant and his coconspirators then attempted to purchase the property, on behalf of the Bank, from FNMA, but were told that the property could only be sold to an individual, not a banking institution. In approximately January 2011, defendant and his coconspirators asked D.W., an employee at the Bank of Oswego, to become a "straw buyer" to purchase 952 A Avenue, Lake Oswego, Oregon, after which D.W. would transfer ownership to the Bank, which would then sell it to G.R. In furtherance of the conspiracy, defendant Walsh and his coconspirators gave $267,000 of Bank of Oswego funds to D.W. to "purchase" the property. Defendant and his coconspirators failed to create any loan documentation for these funds. Defendant and his coconspirators also caused D.W. to sign and submit to Fannie Mae, a variety of false documents in order to complete the sale. Once the sale was completed, D.W. deeded the A Avenue property to Bank of Oswego, and the Bank immediately sold the property to G.R. for $355,000. On or about December 31, 2010, March 31, 2011 and June 30, 2011, in furtherance of the conspiracy, the defendant's coconspirators, with defendant's knowledge, made materially false statements on Call Reports that were thereafter submitted to the FDIC about the status of the real property located at 952 Avenue A, Lake Oswego, Oregon.

6.  **Dismissal/No Prosecution**: The USAO will move at the time of sentencing to dismiss any remaining counts against defendant in the Superseding Indictment. The USAO further agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 6

7.      **Entry of Stipulation, Consent and Order with FDIC**: Defendant agrees that he will execute a Stipulation and Consent to the Issuance of an Order of Prohibition From Further Participation and consent to the entry of an Order of Prohibition From Further Participation ("Order") against him by the Federal Deposit Insurance Corporation. Defendant acknowledges and agrees that the Order will prohibit him from participating in the conduct of the affairs of any insured depository institution pursuant to section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e) and the terms of the Order.

8.      **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

9.      **Relevant Conduct – Fraud Loss**: The parties agree that as a result of defendant's relevant conduct, the loss pursuant to advisory U.S.S.G. §§ 1B1.3 and 2B1.1(b)(1)(I) is more than $1,000,000 and less than $2,500,000. The government may change its position regarding the loss amount consistent with Application Note 3 of U.S.S.G. § 2B1.1 if, at the time of sentencing, the fair market value of S.P.'s security interest in the real property has substantially changed.

10.     **Specific Offense Characteristics**: The government believes that a two-level enhancement for "sophisticated means" pursuant to U.S.S.G. § 2B1.1(b)(10)(C) applies in this case, and will offer evidence at the sentencing hearing to support this enhancement. The defendant is free to contest the application of the "sophisticated means" enhancement.

11.     **Role Enhancements**: The government further believes that a two-level enhancement for "abuse of a position of trust" pursuant to U.S.S.G. § 3B1.3 is appropriate in this case based on defendant's conduct with respect to Count 1 of the Information, and will offer evidence at the sentencing hearing to support this enhancement. The defendant is free to contest the application of this enhancement.

The parties agree that no other specific offense characteristics or upward adjustments apply to defendant's conduct.

12.     **Criminal History**: The parties make no agreement regarding defendant's criminal history.

13.     **Advisory Guideline Calculation**: Defendant acknowledges that if all of the contested sentencing enhancements are imposed, the advisory guideline calculation is as follows:

Base Offense Level [U.S.S.G. § 2B1.1(a)(1)] .......................................................... 7
Loss of Between $1,000,000 and $2,500,000 [U.S.S.G. § 2B1.1(b)(1)(I)] ...............16
"Sophisticated means" enhancement [U.S.S.G. § 2B1.1(b)(10)(C)]........................... 2
Abuse of Position of Trust [U.S.S.G. § 3B1.3] ...................................................... 2

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 7


Offense Level ................................................................................................. 27

As outlined above, the defendant is free to contest the application of the two-level enhancement for "sophisticated means" and abuse of trust. If these enhancements are not imposed, the defendant understands that the resulting advisory guideline calculation is as follows:

      Base Offense Level [U.S.S.G. § 2B1.1(a)(1)] ......................................................... 7
      Loss of Between $1,000,000 and $2,500,000 [U.S.S.G. § 2B1.1(b)(1)(I)] ..............16

Offense Level ................................................................................................. 23

14. **Acceptance of Responsibility**: Defendant must demonstrate to the Court that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level (two levels if the defendant's offense level is less than 16). The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility, including filing an unsuccessful Motion to Withdraw his plea, and as explained in U.S.S.G. § 3E1.1.

15. **Recommended Sentence**: The government will recommend a sentence within the resulting applicable advisory guideline range. The defendant is free to argue for any sentence.

16. **Restitution:** The defendant agrees that the Mandatory Victim Restitution Act requires the Court to order restitution in the full amount to the victims of the offenses in Count 1 and Count 25 of the Superseding Indictment. The defendant hereby agrees and acknowledges that he will voluntary pay restitution for the loss sustained by the Bank caused by the underlying conduct that gives rise to Count 1 of the Information. Restitution shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court. The government will provide a list of the victims, their contact information, and the amount of restitution owed to each prior to sentencing. The defendant acknowledges and understands that the total restitution in the case will not exceed $5,000,000. The obligation of defendant to pay restitution shall be joint and several, as appropriate.

Defendant agrees that, while the district court sets the payment schedule, this schedule may be exceeded if and when Defendant's financial circumstances change. In that event, and consistent with its statutory obligations, the United States may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.


**Property located in La Quinta, CA**

As to the property located at 77-752 Tradition Drive in La Quinta, California ("the Property"), Defendant agrees that the parties will continue the stay of the civil forfeiture action currently pending against the Property in this district in civil case 3:13-CV-02082-MA until

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 8

Defendant has been sentenced in this matter and a restitution order has been entered for Count 1 of the Superseding Indictment. Following the entry of the restitution order, the Financial Litigation Unit of the U.S. Attorney's Office will record a lien against the Property. Once that lien has been recorded, the government will dismiss the pending civil forfeiture action against the Property, and the Financial Litigation Unit will effectuate the sale of the property. After paying for costs and fees associated with the sale of the Property, all proceeds from the sale will be applied to Defendant's restitution order for Count 1 of the Superseding Indictment. Defendant expressly agrees that he will not receive any portion of the proceeds of the sale, nor will he attempt to transfer the Property or his interest in the Property to any other person or entity or to encumber the Property or use it as collateral in any way, at any time prior to the sale.

17.    **Forfeiture Terms**: By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to a money judgment in the amount to be determined by the court, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), which defendant admits represents proceeds of defendant's criminal activity set forth in Counts 1and 25 of the Superseding Indictment, and in Count 1 of the Information. The defendant acknowledges and understands that the total forfeiture in the case will not exceed $4,000,000. Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of this money judgment. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of this money judgment, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees that forfeiture of this money judgment shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture. Defendant agrees that forfeiture of substitute assets as authorized pursuant to 21 U.S.C. § 853(p) shall not be deemed an alteration of defendant's sentence. The judgment of forfeiture entered against the defendant shall be joint and several, as appropriate.

Defendant agrees to withdraw his administrative claim to $63,784.11 U.S. currency filed with the Federal Bureau of Investigation, and agrees to the administrative forfeiture of said currency. Defendant further waives the right to notice of any forfeiture proceeding involving this property, and agrees not to file or assist others in filing a claim in any forfeiture proceeding involving this property, including the civil case filed as 3:15-CV-00085-MA on January 16, 2015.

(a)    **Disclosure of Financial Information:**

Defendant agrees to completely and truthfully disclose to law enforcement officials, at a date and time set by the USAO, all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the financial statement form provided herein within 14 days from defendant's acceptance of this plea agreement, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven (7) days of the event giving rise to the changed circumstances.

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 9

The Defendant expressly authorizes the U.S. Attorney's Office to obtain his credit report. The Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days from the date of sentencing. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

The Defendant's failure to timely and accurately complete and sign the financial statement, and any update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

(b)     **Transfer of Assets**:

Prior to sentencing, Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before he transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.

Defendant agrees that, while the district court sets the payment schedule, this schedule may be exceeded if and when defendant's financial circumstances change. In that event, and consistent with its statutory obligations, the United States may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.

Defendant understands and acknowledges that the USAO is relying upon defendant's representations in entering into this plea agreement. If those representations are false or inaccurate in any way, the USAO may pursue any and all forfeiture remedies available, may seek to have the plea agreement voided, and may seek to have defendant's sentence enhanced for obstruction of justice pursuant to advisory U.S.S.G. § 3C1.1.

(c)     **Assets Not Identified**:  The USAO reserves its right to proceed against any remaining assets not identified either in this agreement or in the civil actions which are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible are subject to forfeiture.

17.     **Additional Departures, Adjustments, or Variances**:  The USAO agrees not to seek any additional upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement.

18.     **Waiver of Appeal/Post-Conviction Relief**:  Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds,

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 10

except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim.
P. 33 and 18 U.S.C. § 3582(c)(2).

19.    **Court Not Bound**:  The Court is not bound by the recommendations of the parties or of
the presentence report (PSR) writer.  Because this agreement is made under Rule 11(c)(1)(B) of
the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind
this plea agreement if the Court does not follow the agreements or recommendations of the
parties.

20.    **Full Disclosure/Reservation of Rights**:  The USAO will fully inform the PSR writer and
the Court of the facts and law related to defendant's case.  Except as set forth in this agreement,
the parties reserve all other rights to make sentencing recommendations and to respond to
motions and arguments by the opposition.

21.    **Breach of Plea Agreement**:  If defendant breaches the terms of this agreement, or
commits any new criminal offenses between signing this agreement and sentencing, the USAO is
relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

22.    **Memorialization of Agreement**:  No promises, agreements or conditions other than
those set forth in this agreement will be effective unless memorialized in writing and signed by
all parties listed below or confirmed on the record before the Court.  If defendant accepts this
offer, please sign and attach the original of this letter to the Petition to Enter Plea.

23.    **Deadline**:  This plea offer expires if not accepted by **Friday, June 12, 2015, at 3:00 p.m.**


Sincerely,

BILLY J. WILLIAMS
Acting United States Attorney


/s/ Claire M. Fay
CLAIRE M. FAY
Assistant United States Attorney
Chief, Fraud Unit


/s/ Michelle Holman Kerin
MICHELLE HOLMAN KERIN
Assistant United States Attorney

David Angeli, Esq.
July 22, 2015
Revised Plea Letter – Geoffrey S. Walsh
Page 11

     I have carefully reviewed every part of this agreement with my attorney.  I understand and voluntarily agree to its terms.  I expressly waive my rights to appeal as outlined in this agreement.  I wish to plead guilty because, in fact, I am guilty.

7/22/15
_____
Date                              Geoffrey S. Walsh, Defendant


     I represent the Defendant as legal counsel.  I have carefully reviewed every part of this agreement with Defendant.  To my knowledge, Defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

2/22/15
_____
Date                              David Angeli, Attorney for
                                  Defendant Geoffrey S. Walsh